IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03178-MEH

MARK ANDRE JACK,

     Plaintiff,

v.

CAROLYN COLVIN, Acting Commissioner of the Social Security Administration,

     Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

     Plaintiff Mark Andre Jack appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for disability insurance benefits ("DIB"), filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and his application for supplemental security income benefits ("SSI"), filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). The parties have not requested oral argument, and the Court finds it would not materially assist in its determination of this appeal. After consideration of the parties' briefs and the administrative record, the Court affirms the ALJ's decision and the Commissioner's final order.

## BACKGROUND

### I.    Procedural History

     Plaintiff seeks judicial review of the Commissioner's decision denying his application for

DIB and SSI benefits filed March 18, 2013.  [AR 165-177]  Plaintiff alleged his disability began

October 1, 2012.  [*Id.*]  After the application was initially denied on November 6, 2013 [AR 81-82],

an Administrative Law Judge ("ALJ") upon the Plaintiff's request held a hearing on April 17, 2014.

[AR 33-80]  An impartial vocational expert testified at the hearing.  [*Id.*]  The ALJ issued a written

ruling on June 13, 2014, finding that Plaintiff was not disabled since October 1, 2012, because

considering Plaintiff's age, education, work experience and residual functional capacity ("RFC"),

there were jobs existing in significant numbers in the national economy that Plaintiff could perform.

[AR 13-27]  The SSA Appeals Council subsequently denied Plaintiff's administrative request for

review of the ALJ's determination, making the SSA Commissioner's denial final for the purpose of

judicial review.  [AR 1-4]  *See* 20 C.F.R. § 416.1481.  Plaintiff timely filed his complaint with this

Court seeking review of the Commissioner's final decision.

## II.    Plaintiff's Alleged Conditions

Plaintiff was born on November 18, 1963; he was 48 years old on the alleged disability onset

date.  [AR 25]  Plaintiff claimed he became disabled on October 1, 2012, and reported that he was

limited in his ability to work by lumbar spondylosis and degenerative disc disease. [AR 211]

Plaintiff also claimed that he suffers from "constant pain" in his right shoulder. [AR 236] The

alleged impairments affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb

stairs, and complete tasks. [AR 240]  Plaintiff, who has a high school education, worked full-time

as a journeyman plasterer for 32 years until January 2013, when he was laid off. [AR 25, 57]

However, Plaintiff claims that he was having difficulty completing his work prior to being laid off

so was "happy to be laid off because [he] couldn't do it anymore." [AR 57-58] The ALJ found the

2

Plaintiff was no longer able to perform his past relevant work because of the physical demands of the job. [AR 25]

### III.   Medical Evidence

The medical evidence shows Plaintiff first sought treatment for chronic back pain on February 28, 2013, from his primary care physician, John D. McLaughlin, M.D., who found tender right paraspinous muscles and "[p]ain on any full extension of the back and with walking." [AR 383] Dr. McLaughlin took x-rays of the lumbar spine, prescribed pain relievers, and referred Plaintiff to a back specialist. [*Id.*] The x-rays of the lumbar spine revealed slight dextroconvex lumbar scoliosis and mildly narrowed disc heights at L2-3 and L4-5, leading to an impression of degenerative discs; however, the x-rays revealed no bony or soft tissue abnormalities, and normal SI joints. [AR 355]

Neurologist Adam P. Smith, M.D., evaluated Plaintiff on March 5, 2013. [AR 288-289] Dr. Smith requested an MRI of the lumbar spine to review for further evidence of spondylosis, and prescribed Plaintiff physical therapy over the next month. [*Id.*] An MRI was conducted at the North Medical Center of Aurora on March 13, 2013, revealing an impression of multilevel lumbar spine degenerative change "most severe at L4/L5 with central canal and bilateral foranimal narrowing at that level." [AR 350-354] Dr. Smith reviewed the MRI results on April 5, 2013, and stated that the MRI showed "spondylosis at almost every lumbar level." [AR 286] Dr. Smith instructed Plaintiff to continue with physical therapy and referred him to Gin-Ming Hsu, M.D., for a right L4-5 injection. [*Id.*] Dr. Smith evaluated Plaintiff again on May 7, 2013, and found that Plaintiff had undergone only one physical therapy session and had not yet seen Dr. Hsu for an injection. [AR 285]

On March 19, 2013, Plaintiff returned to Dr. McLaughlin and complained of right shoulder

pain. [AR 339] Examination revealed right shoulder pain on the slightest abduction and a tender, protruding right clavicle at the manubrium. [*Id.*] Dr. McLaughlin prescribed Plaintiff Vicodin for the pain and ordered x-rays of Plaintiff's right shoulder. [*Id.*] The x-rays revealed mild acromioclavicular osteoarthritis. [AR 349] Dr. McLaughlin referred Plaintiff to John Schwappach, M.D., of Denver Metro Orthopedics for an evaluation of Plaintiff's right shoulder. [AR 329] Dr. Schwappach examined Plaintiff on April 11, 2013, and assessed that Plaintiff suffered from a closed dislocation of the sternum and degenerative joint disease of the right shoulder. [AR 329] Dr. Schwappach recommended an MRI to evaluate Plaintiff's rotator cuff and a CT scan to evaluate the apparent sternovascular dislocation. [*Id.*] On May 28, 2013, Dr. Schwappach reviewed the results of the MRI and CT scan, concluding that Plaintiff suffered from a rupture of the rotator cuff and a labral injury. [AR 316] Dr. Schwappach recommended Plaintiff "should be treated by shoulder arthroscopy for labral repair/debridement" as well as subacromial decompression [SAD], distal clavicle excision [DCE], and rotator cuff tear repair. [*Id.*] On June 28, 2013, Plaintiff underwent surgery for a torn rotator cuff, acromioclavicular joint arthritis, and a detached labrum, all in the right shoulder. [AR 305] Dr. Schwappach was the surgeon, and he performed a right shoulder arthroscopy with labral debridement, distal clavical resection, subacromial decompression, and rotator cuff tear repair. [*Id.*]

On September 11, 2013, Plaintiff attended a consultation with Dr. Hsu at the Spine, Pain & Rehabilitation Center of Colorado, based on a referral from Dr. Smith. [AR 356] Dr. Hsu examined Plaintiff and assessed him with low back pain, limb pain, degenerative disc disease, lumbar disc herniation, lumbosacral radiculitis, spondylosis of unspecified site, without myelopathy, and

posterior facet syndrome. [AR 372] Dr. Hsu recommended proceeding with epidural injections, and also considered moving forward with medical branch blocks to diagnose facet mediated pain, if the epidural injections were not helpful.  [*Id.*]  Plaintiff received his first epidural injection at L5-S1 on September 23, 2013.  [AR 375]  Plaintiff had an additional visit with Dr. Hsu on October 10, 2013, and Plaintiff informed Dr. Hsu that the epidural injection was not effective in controlling his pain. [AR 367] Dr. Hsu then recommended proceeding with a medical branch block to diagnose facet mediated pain, and instructed Plaintiff to return in one week for the procedure. [AR 369] The medical record reflects that Plaintiff never did so.  [*Id.*]  The administrative record shows no further contact with Dr. Hsu; the only subsequent medical records involve two consultations between Plaintiff and Dr. McLaughlin via phone, in October and November of 2013.  [AR 373-374]

## III.    Medical Source Opinions

Dr. McLaughlin completed a Lumbar Spine Medical Source Statement regarding Plaintiff. [AR 380-383]  Additionally, a consultative examiner retained by SSA, Peter L. Weingarten, M.D., evaluated Plaintiff.  [AR 386-388]

### A.    John D. McLaughlin, M.D.

On April 15, 2014, Dr. McLaughlin prepared a "Lumbar Spine Medical Source Statement" following an office visit with Plaintiff. [AR 380-383] Dr. McLaughlin diagnosed Plaintiff with degenerative disc disease of the lumbar spine. [AR 380] Dr. McLaughlin stated that Plaintiff could not bend fully nor walk easily because of abnormal gait, sensory loss, tenderness, muscle spasm, muscle weakness, and impaired sleep. [AR 381] Dr. McLaughlin also found that Plaintiff could only sit or stand for five minutes at a time and less than two hours per working day.  [*Id.*]   Dr.

McLaughlin answered all questions regarding Plaintiff's work limitations by stating, "[h]e cannot work." [AR 382]  Additionally, Dr. McLaughlin stated that Plaintiff was incapable of even low stress work because of being in "too much pain." [AR 383]  Dr. McLaughlin concluded that Plaintiff's limitations had been present since October 2012.  [*Id.*]

      B.    <u>Peter L. Weingarten, M.D.</u>

Dr. Weingarten examined Plaintiff on April 29, 2014. [AR 386] Dr. Weingarten stated, "This is a patient who has advanced adhesive capsulitis and loss of function at the right shoulder [who is] experiencing intractable lumbar pain.  He is not capable of prolonged standing or sitting and is not able to elevate the right shoulder." [AR 387-388] Dr. Weingarten completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)," concluding Plaintiff could occasionally lift and carry no more than 20 pounds, and sit, stand, and walk for no more than one hour each at a time for a total of no more than three hours in a work day. [AR 389-390] Additionally, Dr. Weingarten found that Plaintiff could never reach with his right hand. [AR 391] Dr. Weingarten concluded Plaintiff's limitations had been present for the last 15 years. [AR 394]

**IV.**    **Hearing Testimony**

The ALJ held an administrative hearing on April 17, 2014, at which Plaintiff was represented by counsel. [AR 33-69]  Plaintiff testified at the hearing, indicating he had last worked approximately January 2013 but stopped working because of issues with his back and shoulder. [AR 37-38] Plaintiff later revealed he was actually "laid off" from this former employment. [AR 57] Plaintiff demonstrated to the ALJ the motion required in his former employment as a plasterer, representing that he could not lift his arm higher than shoulder level. [AR 38-39] Plaintiff stated that

he had undergone surgery on his shoulder, but that the doctor who performed the procedure refused to provide a "summary" because Plaintiff still owed him money. [AR 39] Plaintiff admitted that he attended only one session of physical therapy after surgery, but he claimed he stopped attending the therapy because he could no longer afford it after his wife's health insurance was terminated at the beginning of 2014. [AR 39-40] Plaintiff testified that he did not have health insurance, and that he was denied for Medicare and Medicaid. [AR 49] Plaintiff also stated that he and his wife were still in the process of applying for health insurance coverage through the Affordable Care Act. [AR 50]

Plaintiff told the ALJ that he could stand less than 30 minutes at a time and only walk, stand, or sit for a total of two hours in a day. [AR 45-46] Plaintiff also stated that he could only sit for five to ten minutes at one time. [AR 46] Plaintiff testified that his ability to stand, walk, and sit was limited by pain in his back that moved "all the way down, both legs." [*Id.*] Plaintiff described treatments that he received from Dr. Hsu, which he claimed were ineffective. [AR 43-44] He stated that the epidural injection he received from Dr. Hsu "did absolutely nothing" to help him. [AR 43] Additionally, he said that he never picked up the medication (Flexeril) that Dr. Hsu prescribed for him, because he did not believe that his back pain was a muscle problem. [AR 44]

Plaintiff told the ALJ that his typical day involves getting up early and getting his children ready for school, after which he returns to bed to lie down. [AR 51] Plaintiff stated that he is able to drive but not for long distances. [AR 51-52] He also said that he is no longer capable of buying groceries because he could not walk up and down the aisles. [AR 52] Plaintiff told the ALJ that he tries to relieve his back pain through other means, including massages from his wife, over-the-counter back patches, and stretching, but none of these treatments "take the pain out." [*Id.*]

Aimee Spinelli, a vocational expert ("VE"), also testified at the hearing.  [AR 69]  The ALJ

asked the VE to consider a hypothetical individual of Plaintiff's age and education level with the

following restrictions:

> [L]ift and/or carry 20 pounds occasionally, ten pounds frequently; stand and/or walk
> about six hours in an eight hour workday; sit about six hours in an eight hour
> workday; this individual is right hand dominant; there's no overhead reaching above
> the shoulder level with the right hand or with the right arm; occasional climbing of
> stairs; no climbing ladders, ropes or scaffolds; occasional stooping, kneeling,
> crouching and crawling; no exposure to unprotected heights; no work around
> dangerous moving machinery.

[AR 69-70 (hypothetical one)]

The ALJ asked if this individual would be able to perform any work. [AR 70] The VE

testified that the hypothetical individual could work as an assembler of small products, a clerical

assistant or office helper, and a mailroom clerk.  [*Id.*]  The ALJ then altered the hypothetical by

lowering the standing and walking restrictions to, "four hours in an eight hour workday, with the

ability to change positions every hour" from sitting to standing or vice versa. [*Id.* (hypothetical two)]

The VE testified that these added restrictions would lead to "no change to the office helper, no

change to the assembler of small products and no change to the mail room clerk.  These jobs would

remain." [AR 71] The VE stated that all three jobs were "light, seated positions, which is not a DOT

[Dictionary of Occupational Titles] term, but one that I believe can be done both standing or seated."

[*Id.*]

The ALJ then asked if the jobs would remain if the standing and walking were reduced to

only two hours out of an eight-hour working day. [*Id.* (hypothetical three)]  The VE stated that this

change would limit the hypothetical individual to sedentary work, and that available jobs would be

8

information clerk, document preparer, and addressing clerk. [AR7 71-72]  The VE testified that the jobs listed in hypotheticals one and two were a sampling, but that the three jobs mentioned in hypothetical three represented an exhaustive list. [AR 72] The ALJ then added the hypothetical requirement that an individual be off task ten percent of the workday in addition to normal breaks. [*Id.* (hypothetical four)]  The VE replied that ten percent, in addition to normal breaks, would be possible but said anything more than ten percent would be excessive.  [*Id.*]  Finally, the ALJ asked if an individual who missed two days of work in a work month could find any other work.  [*Id.*]  The VE answered no, indicating that the limit for missing work is one to one-and-a-half days in a work month.  [*Id.*]  The VE affirmed that her testimony was consistent with the DOT and, to the extent that it was not, said her testimony was based on her experience in the field. [AR 73]  The ALJ issued an unfavorable decision on June 13, 2014.  [AR 13-27]

## LEGAL STANDARDS

### I.     SSA's Five-Step Process for Determining Disability

To qualify for benefits under sections 216(i) and 223 of the SSA, an individual must meet the insured status requirements of these sections, be under age 65, file an application for DIB and/or SSI for a period of disability, and be "disabled" as defined by the SSA.  42 U.S.C. §§ 416(i), 423, 1382. Additionally, SSI requires that an individual meet income, resource, and other relevant requirements.  *See* 42 U.S.C. § 1382.

Here, the Court will review the ALJ's application of the five-step sequential evaluation process used to determine whether an adult claimant is "disabled" under Title II and Title XVI of the Social Security Act, which is generally defined as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137,

140 (1987).

Step One determines whether the claimant is presently engaged in substantial gainful

activity. If she is, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520, 416.920. Step Two

is a determination of whether the claimant has a medically severe impairment or combination of

impairments as governed by 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant is unable to show

that her impairment(s) would have more than a minimal effect on her ability to do basic work

activities, she is not eligible for disability benefits. *See* 20 C.F.R. 404.1520(c). Step Three

determines whether the impairment is equivalent to one of a number of listed impairments deemed

to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. §§ 404.1520(d),

416.920(d). If the impairment is not listed, she is not presumed to be conclusively disabled. Step

Four then requires the claimant to show that her impairment(s) and assessed residual functional

capacity ("RFC") prevent her from performing work that she has performed in the past. If the

claimant is able to perform her previous work, the claimant is not disabled. *See* 20 C.F.R. §§

404.1520(e), (f), 416.920(e) & (f). Finally, if the claimant establishes a *prima facie* case of

disability based on the four steps as discussed, the analysis proceeds to Step Five where the SSA

Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work

in the national economy in view of his age, education and work experience. *See* 20 C.F.R. §§

404.1520(g), 416.920(g).

## II.     Standard of Review

This Court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied.   *See Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003); *see also White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001).   Thus, the function of the Court's review is "to determine whether the findings of fact ... are based upon substantial evidence and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970); *see also Bradley v. Califano*, 573 F.2d 28, 31 (10th Cir. 1978).   "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).   The Court may not re-weigh the evidence nor substitute its judgment for that of the ALJ.   *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).   However, reversal may be appropriate when the ALJ either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards.   *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

### ALJ's RULING

The ALJ found that Plaintiff had not engaged in substantial gainful activity since October 2012, the alleged onset date (Step One). [AR 18] The ALJ then found that Plaintiff suffered from severe impairments of "lumbar spine degenerative disc disease with lumbar spondylosis, right shoulder rotator cuff tear, close dislocation of sternum, and mild arthritis of acromioclavicular joint

(AC) joint status post rotator cuff surgery in June 2013." (Step Two) [*Id.*] The ALJ found, based

on a review of the entire record, that Plaintiff's impairments did not meet or equal the severity of

one of the listed impairments deemed to be so severe as to preclude substantial gainful employment

(Step Three). [AR 19] The ALJ found that Plaintiff had the RFC to perform light work, with the

following restrictions:

> [C]laimant can lift/carry 10 pounds frequently and 20 pounds occasionally, sit about 6 hours in an 8-hour day, stand [and/or] walk about 4 hours in an 8-hour day, and cannot reach overhead (above shoulder level) with the right dominant upper extremity.  The claimant can occasionally climb stairs and ramps, stoop, kneel, crouch and crawl, cannot climb stairs and ramps, cannot be exposed to unprotected heights, and cannot work around dangerous moving machinery.  The claimant must change position at the workstation every 1 hour for 2-4 minutes before resuming the prior position.

[*Id.*]

The ALJ stated the medical evidence revealed "only mild to moderate clinical and objective

findings that do not support the claimant's allegations of disabling symptoms." [AR 21]. The ALJ

first noted that Plaintiff alleged disability starting in October 2012, yet the earliest evidence of

medical treatment is from February 2013, and Plaintiff admitted working at substantial gainful

activity levels until January 2013, suggesting less than severe symptoms.  [*Id.*]  In regard to

Plaintiff's back pain, the ALJ found that Plaintiff's failure to follow up with either Dr. Smith or Dr.

Hsu, in addition to his failure to follow their treatment recommendations, suggested that Plaintiff

had less than severe back pain and symptoms. [AR 22]  With regard to Plaintiff's shoulder, the ALJ

noted that Plaintiff's failure to pursue physical therapy as ordered by Dr. Schwappach, in addition

to his failure to return to Dr. Schwappach after healing from the shoulder surgery, suggested less

than severe symptoms. [AR 23]

The ALJ also stated that Plaintiff "has made inconsistent statements that diminish the credibility of his allegations of disability." [AR 21] The ALJ noted Plaintiff testified in April 2014 that he could drive only for short distances, but his Function Report from September 2013 showed he drives with no restrictions. [*Id.*] Plaintiff testified that his pain led to trouble sleeping, which in turn caused problems with concentration; but, in his Function Report he denied any problems with concentration and confirmed he can pay attention "as long as I have to." [*Id.*] Plaintiff also testified he does not take any narcotic pain medications because he does not want to "mess up his liver" and the medications make him dizzy, but Plaintiff "asked for Percocet on at least one occasion and asked Dr. McLaughlin to provide long-term narcotics." [*Id.*]

The ALJ then discussed the opinion evidence of both Dr. Weingarten and Dr. McLaughlin. [AR 23-24] The ALJ found Dr. Weingarten's opinion only partially credible, because "the doctor's opinion that the claimant's limitations have been present for 15 years is not credible as the doctor saw the claimant only once and the opinion appears to be based solely on the claimant's subjective complaint." [AR 23] The ALJ stated that "Dr. Weingarten's sit, stand, and walk limitations are not supported by his findings, which show negative straight leg raise, normal neurological findings, and generally normal gait." [AR 23-24] The ALJ also found that Dr. McLaughlin's opinion was not entitled to the weight afforded to treating physician opinions. [AR 24] The ALJ provided extensive discussion regarding her reasons for assigning Dr. McLaughlin's opinion such weight. [*Id.*] For example, Dr. McLaughlin found that Plaintiff's limitations, which in his opinion precluded Plaintiff from any work, were first present in October 2012. [AR 383] However, the ALJ noted that Dr. McLaughlin first saw Plaintiff in February 2013 and Plaintiff worked at substantial gainful activity

levels until January 2013 – facts the ALJ noted were plainly inconsistent with Dr. McLaughlin's opinion that Plaintiff could not work from October 2012. [AR 24] The ALJ found that "[t]he objective evidence, including lumbar spine x-rays and an MRI, which Dr. McLaughlin reviewed, show only mild to moderate findings, also inconsistent with Dr. McLaughlin's functional assessment." [*Id.*] Additionally, the ALJ noted that Dr. McLaughlin is a family care physician and not a spine specialist. [*Id.*]

The ALJ determined that Plaintiff was unable to perform his past relevant work as a journeyman plasterer, because the physical demands of the work exceeded Plaintiff's RFC (Step Four). [AR 25] However, considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded Plaintiff is capable of performing other work that exists in significant numbers in the national economy. [AR 26] The ALJ found that available occupations include assembler of small products, office helper, and mailroom clerk. [*Id.*] As a result, the ALJ concluded (at Step Five) that Plaintiff was not disabled under section 1614(a)(3)(A) of the SSA. [AR 27]

Plaintiff sought review of the ALJ's decision by the Appeals Council on July 7, 2014. [AR 12] On September 19, 2014, the Appeals Council denied Plaintiff's request for review, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 1-4] *See* 20 C.F.R. § 416.1481. Plaintiff timely filed his complaint with this Court seeking review of the Commissioner's final decision.

## ISSUES ON APPEAL

On appeal, Plaintiff alleges the following four issues: (1) the ALJ's RFC findings regarding Plaintiff's sitting, standing, and walking limitations are erroneous because they are not based on

substantial evidence and do not comply with the treating physician rule; (2) the ALJ's RFC findings regarding manipulative restrictions, including reaching restrictions, are not supported by substantial evidence and are inadequately explained in the decision; (3) the ALJ failed to consider Plaintiff's non-exertional impairment of intractable pain in assigning him an RFC; and (4) the ALJ did not make adequate findings to support her conclusion that Plaintiff could perform the jobs of small products assembler, office helper, and mailroom clerk.  Opening Brief, docket # 13 at 21, 25, 27, 29.

## ANALYSIS

I.   **Whether the ALJ's Findings Regarding Plaintiff's Sitting, Standing, and Walking Limitations were Erroneous for Failure to Properly Weigh the Medical Opinions and Failure to Comply with the Treating Physician Rule**

Plaintiff essentially argues the ALJ erred in giving varying weight to different doctors and not giving controlling weight to a treating physician regarding Plaintiff's sitting, standing, and walking limitations.   Opening Brief, docket #13 at 21-25.   Defendant responds that the ALJ explained her reasons for giving varying weight to the medical opinions, and those reasons were consistent with the medical record, so the ALJ's conclusions should not be disturbed on review. Response, docket #17 at 9-16.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)).  The ALJ must "give consideration to all the medical opinions in the record" and "discuss the weight [she] assigns to them."  *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014)

(internal quotation marks omitted).  The applicable regulations governing the SSA's consideration of medical opinions distinguish among "treating" physicians, "examining" physicians, and "nonexamining" (or "consulting") physicians.  *See* 20 C.F.R. § 416.927(c).

When assessing how much weight to give a treating source opinion, the ALJ must complete a two-step inquiry, each step of which is analytically distinct.  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  The ALJ must first determine whether the opinion is conclusive – that is, whether it is to be accorded "controlling weight" on the matter to which it relates.  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *accord Krauser*, 638 F.3d at 1330.  If the opinion is not supported by medically acceptable evidence, then the inquiry at this stage is complete.  *Watkins*, 350 F.3d at 1300.  However, if the ALJ "finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record ."  *Id*.  If not, the opinion is not entitled to controlling weight.  *Id*.  In contrast, if the medical opinion of a treating physician is well supported by medically acceptable evidence and is not inconsistent with the other substantial evidence in the record, an ALJ must give it controlling weight.  *Sedlak v. Colvin*, No. 11-cv-01247-PAB, 2014 WL 717914, at *10 (D. Colo. Feb. 24, 2014) (citing 20 C.F.R. § 416.927(c)(2)).

If the opinion of a treating physician does not merit controlling weight or if there is no opinion by a treating physician, the ALJ must move to step two and consider the following factors in determining how to evaluate other medical opinions in the record: length of the treating relationship, frequency of examination, nature and extent of the treating relationship, evidentiary support, consistency with the record, medical specialization, and other relevant considerations.  *Id.*

"An ALJ may dismiss or discount an opinion from a medical source only if [her] decision to do so is 'based on an evaluation of all of the factors set out in the cited regulations' and if [she] provides 'specific, legitimate reasons' for [the] rejection." *Id.* (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012)).

It is error for an ALJ not to adequately state and explain what weight she gives to medical opinions. *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). The ALJ must give "good reasons" for the weight she ultimately assigns each medical opinion. *Watkins*, 350 F.3d at 1301. The ALJ's decision must be sufficiently specific to make clear to any subsequent reviewer the weight given to the medical opinion, and the reason for that weight. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Even though an ALJ is not required to discuss every piece of evidence, it must be clear that the ALJ considered all of the evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Id.* at 1010. Boilerplate language, unconnected to any evidence in the record, will not suffice to support an ALJ's conclusion. *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). An ALJ may reasonably give less weight to a medical opinion that differs from that same doctor's notes. *See Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013).

Here, the Defendant argues and the Court agrees that the ALJ provided "good reasons for discounting Dr. McLaughlin's treating opinion and partially discounting Dr. Weingarten's examining opinion." Response, docket #17 at 10. Pursuant to step one of *Krauser*, the ALJ found that "Dr. McLaughlin's opinion is not entitled to the weight afforded to treating source opinions for

several reasons." [AR 24]  First, the ALJ noted that Dr. McLaughlin "opined that the limitations

he assessed, which include his opinions that the claimant cannot work, were first present in October

2012." [*Id.*]  However, the record reveals that Dr. McLaughlin saw Plaintiff for the first time in

February 2013, and Plaintiff admitted to working at substantial gainful activity levels through

January 2013. [*Id.*]  Under step one of the *Krauser* analysis, this inconsistency between the doctor's

opinion and the evidence in the record constitutes grounds for not granting the opinion controlling

weight.  Therefore, the ALJ reasonably determined Dr. McLaughlin's opinion that Plaintiff could

not work starting in October 2012 was inconsistent with the objective evidence in the record.

The ALJ also concluded that Dr. McLaughlin's findings regarding Plaintiff's functional

limitations were inconsistent with both the doctor's own treatment notes and the objective medical

evidence.  [*Id.*]  Although Dr. McLaughlin opined that Plaintiff's limitations prevented Plaintiff

from working, the ALJ noted Dr. McLaughlin's own treatment notes "show no complaints of

difficulty walking and no diminished lower extremity strength, muscle atrophy, or gait

abnormalities." [*Id.*] *Newbold* specifically held that an ALJ may reasonably give less weight to a

medical opinion that differs from that same doctor's notes.  718 F.3d at 1266.  Additionally, the ALJ

determined the objective medical evidence, "including lumbar spine x-rays and an MRI, which Dr.

McLaughlin reviewed, show only mild to moderate findings, also inconsistent with Dr.

McLaughlin's functional assessment." [AR 24]  Finally, the ALJ noted that at the time Dr.

McLaughlin completed his medical source statement, he "had not seen the claimant in person for

18

a year since May 2013 . . . [and] [a]t that time, Dr. McLaughlin's exam was generally normal."[1]
[*Id.*]  The record reflects the doctor spent only 15 minutes with Plaintiff as the doctor completed the
medical source statement in May 2014, and "no exam findings are indicated."  [*Id.*]  Because Dr.
McLaughlin completed the medical source statement based solely on a 15-minute session with
Plaintiff, in which he did not report any exam findings, the ALJ reasonably determined that the
opinion was not entitled to the weight afforded to treating source opinions.

Applying step two of the *Krauser* analysis, the ALJ found that Dr. Weingarten's opinion
regarding Plaintiff's limitations was only "partially credible." [AR 23]  The ALJ stated that:

> the doctor's opinion that the claimant's limitations have been present for 15 years is
> not credible as the doctor saw the claimant only once and the opinion appears to be
> based solely on the claimant's subjective complaint. As well, the claimant confirmed
> that he worked as a plasterer for 32 years despite his allegedly disabling symptoms.

[*Id.*]  The ALJ also found that Dr. Weingarten's sit, stand and walk limitations are "not supported
by his findings, which show negative straight leg raise, normal neurological findings, and generally
normal gait." [AR 24] The ALJ therefore considered relevant factors under *Krauser* in determining
that Dr. Weingarten's opinion was only partially credible, including the length of the treating
relationship, the frequency of examination, evidentiary support, and consistency with the record.

The ALJ adequately explained her reasons for discounting the opinions of both Dr.

---

[1]The Court's extensive review of the record reveals Dr. McLaughlin had one additional
in-person examination of Plaintiff on August 19, 2013, at which Plaintiff complained of
"constant pain" in his right shoulder and lower back. [AR 343]  Dr. McLaughlin assessed that
Plaintiff's shoulder was "[s]lowly getting better after the shoulder surgery" and recommended
injections for Plaintiff's back pain.  [*Id*.]  Because the examination revealed no significant
change in Plaintiff's condition, and in light of the fact that neither party raised the issue of the
date discrepancy in the briefs, any error here by the ALJ is harmless.

McLaughlin and Dr. Weingarten, and her decision was sufficiently specific regarding the weights she assigned the opinions and the reasons for those weights. Therefore, the opinion should not be disturbed on appeal.

## II.     Whether the ALJ's Findings Regarding Plaintiff's Manipulative Restrictions Were Inadequately Explained in the Decision

The ALJ's RFC finding included one manipulative restriction that Plaintiff "cannot reach overhead (above shoulder level) with the right dominant upper extremity." [AR 19] Because the ALJ assigned no other reaching restrictions for either arm, Plaintiff argues that the "implied finding" is that the Plaintiff is capable of continuous reaching both in front of him and to the side.  Opening Brief, docket #13 at 20-21.  Plaintiff argues that this determination is both contrary to the opinion of Dr. Weingarten and "entirely unsupported by the evidence." *Id.* at 21.  Defendant responds that the ALJ "considered all of the furnished evidence and made reasonable findings, which are entitled to deference."  Response, docket #17 at 21.

As discussed above, if the opinion of a treating physician does not merit controlling weight or if there is no opinion by a treating physician, the ALJ must consider multiple factors in determining how to evaluate other medical opinions in the record. *Sedlak*, 2014 WL 717914, at *10. "An ALJ may dismiss or discount an opinion from a medical source only if [her] decision to do so is 'based on an evaluation of all of the factors set out in the cited regulations' and if [she] provides 'specific, legitimate reasons' for [the] rejection." *Id.* (quoting *Chapo*, 682 F.3d at 1291). "However, an ALJ need not 'apply expressly each of the six relevant factors in deciding what weight to give a medical opinion,' so long as [she] provides 'good reasons in his decision' for the weight

20

accorded to each opinion." *Thielemier v. Colvin*, No. 12-cv-03178-PAB, 2014 WL 1292885, at *3 (D. Colo. Mar. 31, 2014) (quoting *Oldham*, 509 F.3d at 1258).  In addition, "[a]n ALJ's rejection of a medical opinion based on an incorrect reading of the record is grounds for remand." *Sedlak*, 2014 WL 717914, at *10 (citing *Mercer v. Colvin*, No. 12-CV-35-FHM, 2013 WL 785358, at *2 (N.D. Okla. Mar. 1, 2013)).

Here, Plaintiff references  Dr. Weingarten's consultive examination performed on April 29, 2014, at which time the doctor assessed "significantly reduced range of motion in [Plaintiff's] right shoulder and noted his impression that [Plaintiff] had 'advanced adhesive capsulitis and loss of function at the right shoulder.'"  Opening Brief, docket #13 at 21.  Plaintiff notes that, based on the examination, Dr. Weingarten opined Plaintiff "should never reach in any direction at any level with his dominant right upper extremity."  *Id.*  Plaintiff therefore argues the ALJ's failure "to include any reaching restrictions in the RFC other than a prohibition from reaching overhead" is not based on substantial evidence.  *Id.*

Defendant argues the ALJ considered all of the evidence in the record and made reasonable findings when assigning Plaintiff reaching restrictions in the RFC.  Response, docket # 17 at 21.  The ALJ  referred to the opinion evidence of Dr. Weingarten, and acknowledged that the doctor opined that Plaintiff could "never reach overhead or otherwise reach" with the right upper extremity.  [AR 23]  However, as discussed above, the ALJ explained her discounting of Dr. Weingarten's opinion as only "partially credible."  [*Id.*] An ALJ may only discount a medical source opinion if she provides "specific, legitimate reasons" for her decision to do so.  *Chapo*, 682 F.3d at 1291.  Here, the ALJ specifically pointed to Dr. Weingarten's opinion that Plaintiff's reaching limitation

has been present for 15 years, despite the fact that Plaintiff "confirmed that he worked as a plasterer for 32 years." [AR 23] Because the ALJ explained this specific inconsistency between Dr. Weingarten's opinion and the objective facts, the ALJ reasonably discounted the doctor's opinion regarding reaching restrictions as only partially credible.

Plaintiff also argues – albeit only in one sentence of the Opening Brief – that the ALJ failed to consider Plaintiff's complaints of post-surgical shoulder pain in assessing reaching restrictions. Opening Brief, docket #13 at 21. Defendant argues the ALJ reasonably discounted Plaintiff's subjective complaints. Response, docket #17 at 21. The ALJ's decision notes Plaintiff had surgery on his shoulder in June 2013; yet, a month after the surgery, Plaintiff was "doing well with no complaints." [AR 23] The ALJ also points out that in September 2013, the surgeon who performed Plaintiff's shoulder operation examined Plaintiff and indicated "[h]e is doing well with no new complaints. He has chosen not to attend PT [physical therapy]." [AR 296]

Because the ALJ explained her reliance on Plaintiff's own surgeon's opinion that Plaintiff was both doing well and failing to pursue physical therapy in accordance with the doctor's orders, the ALJ explained why she discounted Plaintiff's complaints of post-surgical shoulder pain. The ALJ also adequately explained her RFC findings regarding Plaintiff's alleged shoulder impairment. Because the ALJ's findings were based on specific and legitimate evidence in the record, her decision regarding Plaintiff's manipulative restrictions should not be disturbed on appeal.

III.     **Whether the ALJ Erred by Failing to Consider Plaintiff's Non-Exertional Impairment of Intractable Pain in Assigning Him an RFC**

Plaintiff argues the ALJ "insufficiently evaluated the objective and subjective evidence of

[Plaintiff's] pain" and, therefore, assigned Plaintiff an improper RFC that failed to account for his intractable pain.  Opening Brief, docket #13 at 24.  Defendant argues the ALJ reasonably concluded that Plaintiff's subjective complaints of pain were not entirely credible.  Response, docket # 17 at 17.

"[I]t is well settled that administrative agencies must give reasons for their decisions." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988).  When determining whether the claimant's pain is credible, the ALJ must consider assertions of severe pain and decide whether the ALJ believed them. *Kepler v. Chater*, 68 F.3d 387,  391 (10th Cir. 1995).  To do this, the ALJ should consider factors such as:

> levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id*.  The ALJ must give a conclusion and the reasons for that conclusion, explaining "why the specific evidence relevant to each factor led [her] to conclude claimant's subjective complaints were not credible," affirmatively linking credibility findings to substantial evidence in the record.  *Id*.  Further, because credibility determinations are within the province of the ALJ, a reviewing court may not upset such findings where they are supported by substantial evidence.  *See Quantu v. Barnhart*, 72 F. App'x 807, 811 (10th Cir. 2003).

A review of the record shows the ALJ provided several reasons for her conclusion that Plaintiff's subjective complaints of pain were not credible.  [AR 21-22]  First, the ALJ found that

Plaintiff made inconsistent statements that diminished the credibility of his allegations of disabling

pain. [AR 21].  Specifically, the ALJ noted:

> [Plaintiff] testified that he can drive only for short distances, but in his Function
> Report he confirmed that he drives with no restrictions.  In a disability report, the
> claimant wrote that he must use the handicap cart when shopping, but in his Function
> Report he wrote that he does not shop and that his wife does the shopping . . . The
> claimant described limited social activities due to pain, but in his Function Report
> he reported visiting others in their homes with no problems.  He testified that sleep
> problems due to pain cause concentration difficulties, but in his Function Report, he
> denied any problems with concentration and understanding, and confirmed he can
> pay attention "as long as I have to" and can follow written and spoken instructions
> "well."  The Claimant testified that he does not take any narcotic pain medications
> because he does not want to "mess up his liver" and because they make him dizzy,
> but he asked for Percocet on at least one occasion and asked Dr. McLaughlin to
> provide long-term narcotics.

[*Id.* (extensive citations to the record omitted)]   In addition to noting Plaintiff's inconsistent

statements, the ALJ explained her opinion was informed by the gap between the alleged onset date

and the dates in which Plaintiff stopped working and sought treatment.  [*Id.*]  The ALJ wrote:

> Although the claimant has alleged his disability since October 2012, the earliest
> evidence of medical treatment is from February 2013.  The fact that the claimant did
> not seek or require medical treatment prior to or around his alleged onset date,
> coupled with his ability to work at SGA levels until January 2013, suggests less than
> severe symptoms.

[*Id.*]  The ALJ reasonably explained that the five-month gap between the alleged onset date and

Plaintiff's first doctor's appointment discounted the credibility of Plaintiff and his subjective

complaints of pain.  Finally, the ALJ noted that the medical evidence in the record "shows only mild

to moderate clinical and objective findings that do not support the claimant's allegations of disabling

symptoms."  [*Id.*]  The ALJ provided an extensive review of Plaintiff's medical history during the

relevant period, noting the mild to moderate findings during that time:

>Dr. McLaughlin's treatment notes show that the claimant first visited in February 2013 with complaints of chronic back pain that prevents him from functioning at work. Exam showed only tender right lumbar spine paraspinous muscles and pain on any full extension of the back with walking. Lumbar spine X-rays showed degenerative discs with normal SI joints. [ ] In March 2013, the claimant reported extreme shoulder pain but exam showed full range of motion. [ ] Dr. McLaughlin provided short-term Percocet in August 2013 for severe back pain and the claimant reported that his shoulder was improving after surgery with only mild to moderate pain on exam. [ ] In December 2013, Dr. McLaughlin had prescribed Percocet and Vicodin and called Dr. Ogin, a pain sepcialist, at the claimant's request for long-term pain management. The claimant testified he never followed up with this referral, suggesting less than severe symptoms.

[AR 21-22 (Extensive citations to the record and extraneous facts omitted)]

The ALJ also noted that in April 2013, Plaintiff was examined by a neurosurgeon who instructed Plaintiff to participate in physical therapy and see another doctor (Dr. Hsu) for a lumbar spine injection to control pain. [AR 22] The ALJ found that the neurosurgeon saw Plaintiff again in May 2013 and "noted that the claimant had not participated in physical therapy nor had he seen Dr. Hsu." [*Id.*] The ALJ thus explained her opinion was affected by Plaintiff's failure to participate in physical therapy or continue care with the other doctor. Furthermore, Plaintiff's medical history during the relevant period revealed only mild to moderate objective findings that the ALJ found did not support Plaintiff's subjective complaints of disabling symptoms.

The ALJ adequately explained her finding that Plaintiff's subjective complaints of intractable pain were not credible and, therefore, not included in the RFC assignment. The ALJ relied on evidence in the record and affirmatively linked the evidence to her credibility findings pursuant to *Kepler*. As such, the opinion should not be disturbed on appeal.

**IV.    Whether the ALJ Erred by Failing to Make Adequate Findings to Support Her Conclusion that Plaintiff Could Perform Other Work in the Economy**

Based on the testimony of the VE, the ALJ found that Plaintiff could perform "unskilled light occupations" including small products assembler, office helper, and mailroom clerk. [AR 26] Plaintiff argues that the ALJ's finding was erroneous because, according to Plaintiff, all three jobs required frequent reaching and "there was no discussion at all regarding how an individual with a restriction from *all* reaching over shoulder level could perform jobs that require frequent reaching of all kinds." Opening Brief, docket # 13 at 26 (emphasis in original). Defendant argues the ALJ "reasonably found that Plaintiff could perform other work because there is no conflict between the vocational expert's testimony and the DOT." Response, docket #17 at 22.

At Step Five of the sequential process, an ALJ bears the burden "to show that there are jobs in the regional or national economies that the claimant can perform with the limitations the ALJ has found [the claimant] to have." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). Specifically,

> the ALJ must find that the claimant retains particular exertional [and non-exertional] capacit[ies], decide whether the claimant has acquired transferable skills, identify specific jobs that the claimant can perform with the restrictions the ALJ has found the claimant to have, and verify that the jobs the claimant can do exist in significant numbers in the regional or national economies. All of these findings must be supported by substantial evidence.

*Id.* at 1088-89; *see also Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005). "Determining 'the functional demands and job duties' of specific jobs and matching those requirements to a claimant's limitations is the very task the ALJ must undertake at step five." *Haddock*, 196 F.3d at 1090. Accordingly, an ALJ may rely on the testimony of VEs and/or reliable publications, such as the DOT. *Id.* "Questioning a vocational expert about the source of his opinion and any deviations

26

from a publication recognized as authoritative by the agency's own regulations falls within the ALJ's duty to develop the record." *Id.* at 1091.  Thus, "[a]n ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.*; *see also Krueger v. Astrue*, 337 F. App'x 758, 761-62 (10th Cir. 2009) (the ALJ committed reversible error by failing to ask the VE to reconcile a conflict between the expert's testimony and the definitions of certain jobs in the DOT).

According to Plaintiff, the SCO (Selected Characteristics of Occupations) states that each of the three jobs the ALJ found suitable for Plaintiff require frequent reaching.[2]  Opening Brief, docket #13 at 25.  Plaintiff alleges that this conflict between the SCO and the VE's testimony was not adequately resolved in the ALJ's decision and, therefore, "the matter must be reversed." *Id.* at 26.  Defendant argues Plaintiff's contention is erroneous, because the ALJ reasonably relied on the testimony of the VE in finding Plaintiff could perform the three listed jobs.  Response, docket #17 at 22-23.

The record reflects the ALJ explicitly included Plaintiff's reaching limitation when presenting the hypothetical to the VE at the hearing. [AR 70] The ALJ included in the hypothetical that "there's no overhead reaching above the shoulder level with the right hand or with the right arm." [*Id.*]  After considering the ALJ's hypothetical, which included the reaching limitation, the VE found that the three aforementioned jobs were suitable for Plaintiff.  [*Id.*]  The ALJ noted the

---

[2]The *Selected Characteristics of Occupations* are incorporated into Westlaw's DOT citations.

VE indicated that "her testimony was consistent with the information contained in the [DOT] and to the extent she testified to matters not contained in the DOT, that her testimony was based on her education, experience and personal observations of the marketplace." [*Id.*] When an ALJ explicitly includes a restriction in a hypothetical question to a VE, the ALJ "is entitled to rely on the vocational expert's testimony, which constitutes substantial evidence in support of her decision." *Perotin v. Colvin,* 110 F. Supp. 3d 1048, 1057 (D. Colo. May 19, 2015). Furthermore, the record reflects that Plaintiff failed to inquire about any conflict regarding reaching when the VE testified at the hearing and, in fact, Plaintiff's counsel focused only on sit, stand, and walking restrictions. [AR 76-79] Because Plaintiff failed to inquire about reaching restrictions during the VE's testimony, there is no basis for finding conflict between the VE's opinion and the DOT. *Jasso v. Barnhart*, 102 F. App'x. 877, 878 (5th Cir. 2004) (holding that Plaintiff's failure to raise the issue of an alleged conflict between the VE's testimony and the DOT at the administrative hearing "deprived the ALJ from addressing and exploring it.").

The ALJ reasonably relied on the VE's testimony regarding available jobs in the economy for Plaintiff to perform, and Plaintiff's counsel failed to ask any questions regarding an alleged conflict between the VE's testimony and the DOT at the administrative hearing. Therefore, the opinion should not be disturbed on appeal.

## CONCLUSION

For the foregoing reasons, the Court concludes the ALJ did not err when evaluating the medical evidence and assigning an RFC to Plaintiff. The ALJ considered all of Plaintiff's alleged impairments, including intractable pain, and properly determined Plaintiff could perform other work

28

in the economy based on the objective evidence and the VE's testimony.  The Court finds the final

decision is supported by substantial evidence in the record as a whole and the correct legal standards

were applied.  Therefore, the decision of the ALJ that Plaintiff Mark Andre Jack was not disabled

and the final order of the Commissioner are **affirmed**.

Dated at Denver, Colorado this 21st day of March, 2016.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

29